UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER TOOKER, an individual

    Plaintiff,

v.                                                            Case No:   2:15-cv-272-FtM-38CM

MICHAEL SCOTT,

    Defendant.
_____/

## **ORDER**[1]

This matter comes before the Court on review of Defendant Michael Scott's Motion for Summary Judgment (Doc. #39) filed on August 19, 2016.  Plaintiff Jennifer Tooker filed her Response in Opposition (Doc. #49) on September 23, 2016.  The matter is fully briefed and ripe for review.

### I.  BACKGROUND

This case revolves around Tooker's allegations that Scott, the duly elected Sheriff of Lee County, through the Lee County Sheriff's Office ("LCSO"), failed to provide her overtime wages in compliance with the Fair Labor Standards Act ("FLSA"), and retaliated against her by firing her after she lodged numerous complaints.

On April 23, 2013, Tooker began working as an hourly employee, scheduled for forty (40) hours per week within the LCSO's Human Resources Office ("HR").  (Doc. #40

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

at 41:7-42:3). Tooker's duties were to conduct pre-employment polygraph examinations, and to prepare reports for same. (Doc. #40 at 48:1-12, 49:25-50:5). Tooker alleges that in order for her to complete her duties, she required three (3) to four (4) hours to perform each examination and another three (3) hours to prepare the corresponding report. (Doc. #40 at 40:4-11, 72:3-6). Meanwhile, Tooker's schedule generally consisted of four (4) ten (10) hour days, with regular work hours between 7:00am and 5:00pm, Tuesday through Friday. (Doc. #40 at 140:6-9).

The facts surrounding Tooker's employment are disputed. Tooker alleges that from the beginning of her employment in April 2013, she was expected to perform one (1) or two (2) polygraph tests a day, as well as to complete the corresponding reports. (Doc. #40 at 43:11-17, 49:25-50:5). She further alleges that she worked uncompensated overtime to complete her duties. (Doc. #40 at 15:8-10, 64:25-65:2). As a result, she complained to her coworkers and superiors. (Doc. #40 at 15:21, 64:12-14, 67:3-16, 68:10-69:6, 70:14-71:5, 134:6-7, 134:23-135:11, 136:4-22, 139:11-140:3).

According to Tooker, her immediate superior told her that the existing policy was not to pay overtime and that nothing could be done. (Doc. #40 at 67:19-22). Tooker alleges that further complaints were met by a range of reactions, ranging from an eye-roll from her immediate superior, to a stern reprimand from a high level superior, who told her to falsify her time records and said that regardless of how many hours she worked, she would not be paid for more than forty hours.[2] (Doc. #40 at 667:23-68:2-4, 70:17-71:5). While Tooker alleges that she complied with these instructions out of fear of losing her

---

[2] Scott expressly denies these allegations. (Docs. #39 at 4 n. 6, #39-1 at 2, #39-2 at 3, #39-3 at 2, #39-4 at 1-2).

job, she continued to complain to coworkers and superiors.  (Doc. #40 at 134:1-4, 187:7-17).

Despite her complaints, Tooker began conducting criminal polygraph examinations for the LCSO Major Crimes Unit ("MCU") in June 2013.  (Doc. #40 at 92:18-93:1-5).  These examinations were performed after her normal working hours for HR.[3]  (Doc. #40 at 110:1-111:25).  While another polygraph examiner also handled these criminal examinations as well, Tooker alleges that she was chosen more often because she specifically requested work from the MCU, and because she made herself available around-the-clock.  (Doc. #40 at 110:1-111:25).

Because of Tooker's complaints, she alleges that her superiors acted negatively toward her, and increased her workload to the point that she was required to perform two (2) polygraph tests per day.  (Doc. #40 at 120:6-14).  To cope with her workload, Tooker alleges that she appeared early, stayed late, and took work home. (Doc. #49 at ¶ 80).  Even so, Tooker began to fall behind in her work, and grammatical and typographical errors became an issue.  (Doc. #40-1 at 202).  During a subsequent meeting regarding these errors, records indicate that Tooker admitted she felt it was difficult to perform her regular HR work in a timely fashion, and asked for a week to complete each report.  (Doc. #40-1 at 204).  Her request was denied.  *Id.*

When problems persisted, Tooker met again with her superiors about her scheduled hours for HR and MCU.  (Doc. #40 at 106:3-5).  As a result of the meeting, Tooker was told that she could no longer conduct criminal polygraphs for the MCU.  (Doc. #40 at 108:15-21).  Tooker was informed that this move was not punitive in nature, but

---

[3] Tooker was paid overtime for her criminal polygraph efforts, but these payments came with the express consent of a superior in MCU. (Doc. #40 at 63:8-10).

Case 2:15-cv-00272-PAM-CM   Document 55   Filed 10/28/16   Page 4 of 19 PageID 1248

was meant to remove the burden of obligation from her with regard to the time obligations of performing criminal polygraphs. (Doc. #40-1 at 207).

As time progressed, Tooker alleges that she continued to complain to her superiors and coworkers about uncompensated overtime hours and eventually did so on a daily basis. (Doc. #40 at 134: 6-17). Tooker further alleges that she submitted her last formal complaint on January 9, 2015. (Doc. #49-2 at 5). Two weeks later, the LCSO notified her of an internal affairs investigation that would be conducted against her for insubordinate conduct. (Doc. #40 at 169:24). Thereafter, Tooker was placed on administrative leave with pay. (Doc. #40 at 169:20-22). After speaking with the LCSO about the investigation, her appointment was withdrawn. (Doc. #40 at 180:4-7). An appeal did not change the LCSO's decision, and she was fired. (Doc. #40 at 183:5).

Tooker then filed the instant suit against Scott (Doc. #1) on May 1, 2015, and an Amended Complaint (Doc. #25) on June 29, 2015. Now that discovery has closed, Scott moves for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.  The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden,

the court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999). Once the court determines that the moving party has met its burden, the burden shifts to the non-moving party, who must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Canada*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Failure to show sufficient evidence of any essential element is fatal to the claim, and the court should grant the summary judgment. *Celotex*, 477 U.S. at 322-323. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992).

## III.   DISCUSSION

The crux of Tooker's claims stem from the allegation that under the FLSA, her workload for HR could not reasonably be performed within a forty (40) hour workweek, and that she worked uncompensated overtime hours to avoid falling behind in her work.

5

Tooker also claims that because she complained to LCSO about these issues, she was fired in retaliation.

Scott argues that he is entitled to summary judgment on Tooker's FLSA overtime allegations because (1) Tooker has not demonstrated that she worked overtime; (2) all overtime reflected on her time sheets was appropriately compensated; and (3) even if she did work overtime, the LCSO did not know or have a reason to know of her efforts.

Moreover, Scott argues that he is entitled to summary judgment on Tooker's retaliation claim because (1) she cannot demonstrate that she engaged in any statutorily protected activity; (2) she cannot show any causal connection between complaints that she made regarding unpaid overtime compensation and firing her; and (3) there was a legitimate, non-retaliatory reason for firing her.

Upon review of the record, the Court finds that genuine issues of material fact preclude entry of summary judgment.

### A. Tooker's FLSA Claim for Lack of Overtime Compensation

The FLSA generally mandates that employees may not work more than 40 hours per week without accruing overtime wages at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). A person is an employee if she is suffered or permitted to work. 29 U.S.C. § 203(g). If a covered employee is not paid the statutory wage, the FLSA creates a private cause of action against the employer for the recovery of overtime wages. 29 U.S.C. § 216(b). Notably, the employee's reason, or employer's lack of request to perform the work, does not weigh in this equation. *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). This is made clear by 29 C.F.R. § 785.11, which states:

> [w]ork not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

*Id.*

As such, it is well established that "if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). With this in mind, to prevail on an FLSA overtime claim, a plaintiff must prove that "(1) he or she worked overtime without compensation and (2) the [defendant employer] knew or should have known of the overtime work. *Allen*, 495 F.3d at 1314.

1. Overtime

Scott first alleges that he is entitled to summary judgment because Tooker has failed to demonstrate that she worked overtime hours. He supports his position by arguing that Tooker has failed to present any tangible records of her overtime, and instead that her understanding of the overtime hours she worked is nothing more than conjecture. Scott also maintains that Tooker's claims are undermined by the fact that her time sheets do not reflect that she worked overtime hours for HR, and that each time sheet was signed by Tooker below a certification that read: "I hereby certify that the above hours indicated are true and accurate, I have included all hours worked during the pay period & no hours have been omitted." (Doc. #40-1 at 79-199).

While an "FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation . . . [the public policy of the statute] militate[s] against making that

7

burden an impossible hurdle for the employee." *Allen*, 495 F.3d at 1315 (citation omitted). And, while it is normally an employer's duty to keep records of an employee's wages, in situations where records cannot be trusted and the employee lacks documentation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1315 – 16. From this lens,

> the burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 1316.

Scott also argues that *Brumbelow v. Quality Mills, Inc.*, 462 F. 2d 1324, (5th Cir. 1972) prevents Tooker from arguing that her time sheets under reported her actual time worked. In *Brumbelow*, a worker who assembled electric light pull cords in her home allegedly underreported her hours to satisfy her workload and keep her job. *Id.* at 1325. The court there held that "minimum required production is not alone enough to impose employer liability to [a worker] who, in order to maintain her job, understates the hours worked." *Id.* at 1327. That said, the court limited its opinion "on the narrow facts of [the] case," and expressly entertained that "[t]here was no evidence that the employer required the entry of false reports of hours worked." *Id*.

Here, the Court is presented with contradictory evidence about whether Tooker was instructed to falsify her time records. Tooker explicitly testified in deposition that she

8

was instructed only to account for her allotted 40 hours, regardless of the hours she worked. (Doc. 40 at 51:23-52:3, 70:11-71:1). She buttresses her testimony by offering the affidavit of a former LCSO employee Deborah Antilia, who states that she frequently observed Tooker working beyond normal hours, or taking work home. (Doc. #49-3 at 1-2). Antilia further recounts that Tooker worked more than 40 hours during each week they were co-workers, and that it was policy of Tooker's superiors to prohibit overtime compensation in HR. (Doc. #49-3 at 2).

Additionally, Tooker has provided evidence that she emailed her superiors indicating the performance of work outside of normal hours. (Doc. #49-10 at 1, #49-20, #49-21). Lastly, Tooker offers the circumstantial argument that time sheets she submitted bear indicia of inaccuracy because unless criminal polygraphs were performed, all time sheets reflect exact forty (40) hour workweeks. She argues that this does not conform to the often erratic nature of human time expenditure, which would likely lead to less uniform time entries over the course of employment.

In contrast, Scott offers affidavits from a number of Tooker's superiors, all of which state either that Tooker was never told she could not report overtime hours, or that Tooker was never told she could not report more than ten (10) hours in a workday. (Doc. #39-1 at 2, #39-2 at 3, #39-3 at 2, #39-4 at 1-2). Instead, these affidavits each state that Tooker was advised that her position was not funded or authorized for overtime, or that she was required to get supervisory approval in advance of conducting any overtime work. (Doc. #39-1 at 2, #39-2 at 3, #39-3 at 2, #39-4 at 1-2).

Because the evidence presented by the parties is contradictory, at this stage, all reasonable inferences must be drawn in Tooker's favor. *Shotz*, 344 F.3d at 1164.

Consequently, the narrow facts of this case make *Brumbelow* inapposite, and for the purposes of summary judgment, the LCSO's time records cannot be trusted as accurate.

As such, Tooker is free to prove her overtime hours at trial through evidence other than precise written documentation, such as her recollections of triggering factors for workload, interplay between her duties for HR and MCU, or other internal factors within the LCSO. See *Allen*, 495 F.3d at 1317. Taken in the light most favorable to Tooker, her allegations indicate that there is a genuine issue of material fact whether she worked overtime.

### 2. Overtime Compensation

Scott next argues that even if Tooker did work overtime, she was compensated for those hours. In support, Scott offers hourly pay sheets that allegedly show that Tooker was compensated for any overtime hours she reported when working for the LCSO, regardless of whether she worked for HR or the MCU. Tooker responds that the time records merely indicate that she received overtime wages only from her activities with the MCU, and that this is not a result of the fact that she did not work overtime, but because she was explicitly instructed not to include her overtime hours on her time sheets.

The record shows that of the time sheets that Scott submitted, all but three indicate that payment of overtime wages came pursuant to work with the MCU.[4] (Doc. #40-1 at 79-199). The other time sheets consisted of (a) a forty-two (42) hour work week, followed by a thirty-eight (38) hour week for which it is unclear whether Tooker was properly compensated; (b) a week in which Tooker worked eight (8) overtime hours on a Saturday

---

[4] This can be discerned because the overtime wages are specifically denoted as MCU hours and accompanied by sheets of paper indicating that the overtime had been approved by an MCU representative. (Doc. #39-1 at 79-199).

for an approved HR job fair; (c) a week in which four (4) hours of overtime were paid for Tooker's work with an undefined "IA" department.[5] (Doc. #40-1 at 81, 107, 122).

As is mentioned above, Tooker argues that she was expressly instructed not to submit time sheets that reflected overtime hours, but that she worked overtime to avoid falling behind in her tasks.  She further testifies that she was never paid overtime in accordance with her efforts.  These arguments are supported by evidence of time records that Tooker avers she submitted, but was forced to reconfigure because the LCSO refused to pay overtime wages for her efforts.[6]  (Docs. #49 at 22, #49-22 at 1, #49-23).

While Scott has offered affidavits from Tooker's superiors stating that she was never instructed to falsify her records, no evidence has been offered other than conclusory self-confirming time records that would show Tooker was paid appropriately for all overtime hours that she contends she was instructed not to list on her time records. Again, because the parties have offered contradictory testimony, Tooker's allegations are given preference.  Accordingly, there is a genuine issue of material fact as to wehther Tooker worked overtime without compensation.

---

[5] The time sheets indicate that Tooker's bi-weekly pay period between May 12, 2013 and May 25, 2013, consisted of eighty (80) hours, or what would otherwise be within her 40 hour per week allotment when viewed from a macro pay-period perspective. (Doc. #40-1 at 81). Because overtime wages are computed weekly pursuant to 29 U.S.C. § 207(a)(1), this appearance would not have a legal impact, and Tooker should have been paid overtime.  That said, the Court notes that all other overtime entries were accompanied by express authorization from an LCSO superior, which is absent in this circumstance. Because Tooker alleges that she was only provided with overtime once while working with HR, and that occurred when she worked the job fair discussed *supra*, and because there is no evidence on the record that Tooker was paid overtime for this specific entry, a question of fact exists as to whether Tooker was appropriately compensated. (Doc. #40 at 81:9-13).

[6] The accuracy of these reports is further called into question by the existence of an Amended Time Sheet (Doc. #40-1 at 106), and an original (Doc. #40-1 at 107) for the same dates, on which the amended reports less hours worked.

11

### 3. Notice

Finally, Scott argues that even if Tooker did work overtime hours, the LCSO had no reason to know because Tooker routinely fell behind in her work, frequently volunteered her time with the MCU, and because of the certification on her time sheets stipulating to the true and accurate reflection of Tooker's hours worked.

"In reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." *Reich*, 28 F.3d at 1082 (internal quotation omitted). "An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. The cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided." *Id.* (internal quotation omitted).

"An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift. *Allen*, 496 F. 3d at 1319. Moreover, "[t]he employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business." *Id.* (citation omitted). And, while "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents her employer from finding it[,]" "when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." *Id.*

Here, as is laid out more fully above, Tooker alleges she was actively instructed to falsify her time sheets by entering only forty (40) hours per week, regardless of how much

time she actually worked, she complained frequently about the LCSO's failure to pay her appropriate overtime wages, she conducted work activities including sending emails to superiors regarding work outside of normal business hours, and a coworker at the LCSO has offered a sworn affidavit stating she observed Tooker regularly working outside of normal hours.

While Scott offers a differing account of the actual incidences of Tooker's complaints, he does not expressly dispute Tooker's allegation that numerous complaints were in fact lodged. Instead, Scott seizes on Tooker's deposition testimony wherein she alleges to have complained to the LCSO about overtime wages within the first weeks of her employment, in December 2013, and in August 2014. Conversely, Tooker alleges she complained on numerous occasions up to January 9, 2015. As a result, based on the incidence of complaints alone, there is a genuine issue of material fact as to the LCSO's knowledge of Tooker's overtime hours.

Even though Scott has presented sworn affidavits from Tooker's superiors stating that they have never directed her to falsify her time sheets, because Tooker has presented contradictory evidence, her assertions must be read in the light most favorable at this stage. As the Court has already mentioned, the totality of these considerations calls Tooker's time records into question. Moreover when taken together, they reveal that for the purposes of summary judgment, a genuine issue of material fact exists as to whether the LCSO had sufficient notice or actual knowledge of Tooker's overtime work.[7]

---

[7] On October 13, 2016, Tooker filed a Notice of Supplemental Authority (Doc. #53) citing *Gilbert v. City of Miami Gardens*, 625 Fed. Appx. 370 (11th Cir. 2015). Notably, "[s]upplemental filings should direct the Court's attention to legal authority or evidence that was not available to the filing party at the time that that party filed the original brief to which the subsequent supplemental filing pertains." *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2014 WL 2686060, at *1 (S.D. Fla. June 13, 2014); *see also Girard v. Aztec RV Resort, Inc.*, No. 10-62298-CIV, 2011 WL 4345443, at *2 (S.D. Fla. Sept. 16, 2011). The case cited by the Plaintiff in her Notice was already in existence at the time her Response in Opposition was

**B. Tooker's FLSA Claim for Retaliation**

Scott also moves for summary judgment on Tooker's retaliation claim, alleging that Tooker cannot demonstrate that she engaged in any statutorily protected activity, that no causal connection exists between Tooker's complaints regarding overtime wages and her termination, and that there was a legitimate, non-retaliatory reason for Tooker's termination.

It is unlawful for any person to "discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under the FLSA. 29 U.S.C. § 215(a)(3). A prima facie case of retaliation requires a plaintiff to demonstrate that (1) she engaged in activity protected under the FLSA, (2) she subsequently suffered an adverse action by defendant, and (3) a causal connection existed between her activity and the adverse action. *See Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342 – 43 (11th Cir. 2000). A plaintiff must prove that the defendant would not have taken the adverse action "but for" her assertion of FLSA rights. *Id.* at 1343. The adverse action must therefore be subsequent to plaintiff's assertion. If the employer concedes that an adverse action was taken, it may offer a legitimate reason that does not invoke the engagement of a protected activity. *Id.* The plaintiff may then attempt to show pretext to disprove the employer's argument. *Id.*

*1. Protected Action*

Scott first avers that he is entitled to summary judgment because Tooker did not engage in a statutorily protected activity. Specifically, Scott argues that this is because

---

filed. As such, this filing is improper. The parties are cautioned that future improper filings may be stricken from the record pursuant to the Court's inherent power to control its docket. *See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).*

14

she never lodged specific complaints that she was performing uncompensated overtime work. To fall within the scope of the anti-retaliation provision of the FLSA, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). That said, informal complaints to an employer regarding wage practices or any conduct that implicating the FLSA qualify as protected activity. See *EEOC v. White and Sons Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989); *see also Burnette v. Northside Hosp.*, 342 F.Supp.2d 1128, 1133-34 (N.D.Ga. 2004) (stating protected activity does not require specific FLSA reference so long as the activity or complaint concerns an employer's wage or hour practices). As such, this standard may be satisfied by oral complaints, as well as by written ones. See *Kasten*, 563 U.S. at 14.

Here, Tooker alleges that her complaints regarding uncompensated overtime constituted protected activity. These complaints were accompanied by notifications to her superiors that she was working outside of regular hours, both inferentially through emails and through instances where Tooker directly complained to her superiors in person. The context of those notifications forms a sufficiently clear basis for the LCSO to understand that they were assertions of Tooker's rights under the FLSA. As such, the Court finds that Tooker's complaints regarding compensation for the overtime hours she worked constitute a statutorily protected activity.

### 2. Causal Connection

Scott next argues that no causal connection exists between Tooker's complaints and her firing. To establish a causal connection, a plaintiff must show that protected

activity occurred, the decision maker was aware of the protected activity, and the existence of "a close temporal proximity between this awareness and the adverse . . . action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). Courts have held that a month between the conduction of "the protected expression and the adverse action" is not too protracted. *Id.* Conversely, decisions holding that a period of three (3) to four (4) months to be too far removed have been cited by the Supreme Court with approval. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, (2001).

Again, contradictory evidence is presented on this issue. Scott notes Tooker's allegations that she made complaints about her work schedule within the first week of her employment, in July 2013, December 2013, and lastly, around August 2014, and argues that the roughly five (5) months between August 2014 and the beginning of the internal affairs investigation in January 2015 is too protracted for Tooker to establish the causal connection necessary for her retaliation claim.

Conversely, Tooker contends that she complained numerous times in 2013, and steadily increased the amount and audience of her complaints until January 2015. In fact, Tooker contends that she lodged her last complaint a mere 11 days before the internal affairs investigation against her was commenced on January 21, 2015.

The Court cannot overlook the temporal proximity of Tooker's last alleged complaint and the onset of the internal affairs investigation against her. As a result, the

16

Court finds a genuine issue of material fact as to the LCSO's awareness of Tooker's assertion of her rights under the FLSA, and a causal connection that led to her termination.

### 3. Legitimate Reason

Finally, Scott argues that the LCSO's actions did not constitute retaliation because there was a legitimate reason to terminate Tooker's employment. Scott further contends that this reason was separate from her complaints regarding overtime. Tooker, however, argues that a contextual review rebuts Scott's argument.

Where, as here, a plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 822 (11th Cir. 2008). "Under this framework, if the plaintiff establishes a *prima facie* case and the employer proffers a legitimate, non-discriminatory reason for the adverse employment decision, the plaintiff may then show that the employer's proffered reason was not the true reason but instead was a pretext for discrimination." *Chambers v. Florida Dep't of Transp.*, 620 F. App'x 872, 876 (11th Cir. 2015) (citations omitted). That said, "[t]he burden-shifting framework of *McDonnell Douglas* is not, and was never intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Id.* at 877 n. 5. Instead, a triable issue of fact arises "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*

17

To establish pretext, a plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision" and may demonstrate this either "directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005). When determining whether a defendant's proffered reason for constructively discharging Tooker was pretextual, it is the motive of the decision maker that is at issue. See *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989).

Here, Scott alleges that over the course of Tooker's employment she consistently inserted opinions into her reports regarding the efficacy of certain polygraph examination methodologies. Scott further maintains that Tooker was frequently behind in the submission of her polygraph reports, frequently committed grammatical and typographical errors when submitting same, and failed to ask all requisite polygraph questions listed by the LCSO. Scott maintains that these infractions, particularly the insertion of Tooker's opinions into her reports, amounted to insubordination and was the legitimate and non-retaliatory reason for her termination. On the other hand, Tooker argues that she was not insubordinate, and her termination was pretextual because of her continued complaints regarding the payment of overtime, the last of which occurred only days before she was placed on administrative leave.

Upon review, Tooker's allegations establish a *prima facie* case of retaliation under the FLSA. Along with Tooker's allegation that she frequently worked overtime, and that she was expressly instructed not to submit time sheets reflecting overtime hours, the Court finds that Tooker presents a convincing mosaic that would allow a jury to infer

intentional discrimination by the LCSO when she was fired. As such, there is genuine issue of material fact as to whether Tooker's last complaint was in such close temporal proximity to the onset of the LCSO internal affairs investigation that it would negate Scott's proffered legitimate and non-retaliatory reason for her termination.

Accordingly, it is now

**ORDERED:**

Defendant Michael Scott's Motion for Summary Judgment (Doc. #39) is **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida this 28th day of October, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record